IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JEREMY A. POWELL, et al.,

        Plaintiffs,

v.                                CIVIL ACTION NO. 2:13-cv-32179

THE HUNTINGTON NATIONAL BANK,

        Defendant.

**MEMORDANDUM OPINION AND ORDER**

Pending before the Court is Defendant The Huntington National Bank's motion for judgment on the pleadings [ECF 6]. Also pending is Plaintiffs' motion for leave to file a surreply [ECF 20]. For the reasons set forth herein, the Court **DENIES** both motions.

I.    BACKGROUND

Plaintiffs Jeremy A. Powell and Tina M. Powell filed a Complaint in the Circuit Court of Kanawha County, West Virginia on October 15, 2013 (ECF 1–1). The Complaint alleges that Plaintiffs "bring this action on his [sic] own behalf and on behalf of a class of West Virginia consumers who have had unlawful late fees charged to their home loan accounts." (*Id.*) Plaintiffs allege two claims for relief. Count I alleges that Defendant illegally assessed late fees in violation of the terms of Plaintiffs' mortgage loan contract and in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") (W. Va. Code § 46A–3–112).[1] Count II

---

[1] Section 46A–3–112 provides in pertinent part:

\* \* \* \* \*

(2) A delinquency charge under [this section] may be collected only once on an installment however long it remains in default. No delinquency charge may be collected with respect to a deferred installment unless the installment is not paid in full within ten days after its deferred due date. A delinquency charge may be collected at the time it accrues or at any time thereafter.

alleges a misrepresentation claim under Section 46A–2–127 of the WVCCPA.[2] The Complaint alleges that the action is a class action brought pursuant to West Virginia Rule of Civil Procedure 23. (*Id.* at 5–6.)

On December 13, 2013, Defendant timely removed the state case to this Court (ECF 1). Defendant then moved for judgment on the pleadings (ECF 6). Plaintiffs responded in opposition (ECF 12), Defendant replied (ECF 19), and Plaintiffs filed a motion for leave to file a surreply (ECF 20). This matter is ripe for adjudication.

## II.     LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure succinctly provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Williams v. Basic Contracting Servs., Inc.*, Civil Action No. 5:09-cv-00049, 2009 WL 3756943 (S.D. W. Va. Nov. 9, 2009) (citing *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002)). When considering a motion for judgment on the pleadings under Rule 12(c), the Court applies the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6). *Id.* (citing *Burbach.*, 278 F.3d at 405–06 (4th Cir. 2002)). A court

---

(3) No delinquency charge may be collected on an installment which is paid in full within ten days after its scheduled or deferred installment due date, even though an earlier maturing installment or a delinquency or deferral charge on an earlier installment may not have been paid in full. For purposes of this subsection, payments shall be applied first to current installments, then to delinquent installments and then to delinquency and other charges.

[2]  Section 46A-2-127 provides in pertinent part:

No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

\* \* \* \*

(d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding.

2

must accept all well-pleaded allegations in the plaintiff's complaint as true and draw all reasonable factual inferences from those facts in the plaintiff's favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires that the factual allegations "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id*. If evidence outside the pleadings is tendered to and accepted by the court, the motion for judgment on the pleadings is converted into a motion for summary judgment under Rule 56. *Id.* (citing *A.S. Abell Co. v. Baltimore Typographical Union*, 338 F.2d 190, 193 (4th Cir. 1964); Fed. R. Civ. P. 12(d). The motion is not converted into a summary judgment motion if the court considers documents and facts of which it may take judicial notice. *Id.* (citing *R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir. 2006); *Armbruster Prods. v. Wilson*, No. 93–2427, 1994 U.S. App. LEXIS 24796, at *5, 1994 WL 489983 (4th Cir. Sept. 12, 1994) (unpublished)). The court may take judicial notice of certain facts which are not subject to reasonable dispute, Federal Rule of Evidence 201, and of the existence and contents of various types of official documents and

records. *Id.* (citing *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (documents filed with government agencies); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (records of bankruptcy court); *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 n.3 (W.D.N.C. 2008) (EEOC Complaints and right-to-sue notices)). A court may also consider documents attached to the Complaint, *see* Federal Rule of Civil Procedure 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the Complaint and authentic. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a Complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243–44 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

### III. DISCUSSION

On December 13, 2013, Defendant timely removed the state case to this Court (ECF 1). The tendered bases for this Court's jurisdiction are federal question jurisdiction under 28 U.S.C. §§ 1331 and diversity jurisdiction under the class action provisions contained in 28 U.S.C. § 1332(d).

In support of its motion for judgment on the pleadings, Defendant argues that Plaintiffs' claims are completely preempted by the National Bank Act ("NBA"), 12 U.S.C. §§ 85 and 86. Defendant reasons that, because Plaintiffs' Complaint has not alleged a violation of the NBA or a predicate state law claim that is authorized by the NBA, it is entitled to judgment as a matter of law because Plaintiffs' Complaint fails to state a viable claim for relief. (ECF 7 at 1.)

For the reasons set forth below, the Court finds that the NBA does not preempt the claims alleged in Plaintiffs' Complaint. Consequently, Defendant may not rely on this Court's federal question jurisdiction. The Court does have jurisdiction over this case, however, based on its diversity jurisdiction under 28 U.S.C. §§ 1332(d) and 1453. The Court will address each of these jurisdictional issues in turn.

    A.    *Plaintiffs' state law claims are not preempted by the National Bank Act*

In its notice of removal, Defendant purports to invoke this Court's federal question. A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. § 1441(b). To determine whether the claim arises under federal law, a court must examine the "well pleaded" allegations of the Complaint and ignore potential defenses: *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) A defense that relies on the preemptive effect of a federal statute will not provide a basis for removal. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13 (1983). As a general rule, absent diversity jurisdiction, a case will not be removable if the Complaint does not affirmatively allege a federal claim. *Beneficial*, 539 U.S. at 6. Two exceptions to this general rule are: (1) a state claim may be removed to federal court -when Congress expressly so provides; and (2) when a federal statute wholly displaces the state-law cause of action through complete pre-emption.[3] *Id.* at 8. As explained by the Supreme Court in *Beneficial*:

> When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under

---

[3] Although not pertinent here, a state claim can also be removed through the federal supplemental jurisdiction statute, 28 U.S.C. § 1367(a), as long as there is another removable claim.

>   28 U.S.C. § 1441(b), which authorizes any claim that "arises under" federal law to be removed to federal court.

*Id.*

The NBA, 12 U.S.C. §§ 21–216d, authorizes a national bank "to charge interest at the rate allowed by the laws of the state in which the bank is located." In *Beneficial*, the Court held that in actions against national banks for usury, §§ 85 and 86 of the National Bank Act provide the exclusive cause of action for such claims and there is "no such thing as a state-law claim of usury against a national bank." *Id.* at 11.

Thus, in determining whether the NBA pre-empts Plaintiffs' claims, the Court must examine the character of the claims. If they assert usury claims, such claims would be pre-empted by §§ 85 and 86 of the NBA and this Court would have federal question jurisdiction over this case. If Plaintiffs' Complaint does not assert usury claims but purely state consumer protection claims that do not challenge the rate of interest charged, federal question jurisdiction is lacking and, absent diversity jurisdiction, remand to state court would be required.

Plaintiffs' Complaint states the case "arises out of the systematic abusive loan-servicing practices of the Defendant" and "concerns the assessment by Huntington of illegal and multiple late fees to its West Virginia consumers who have their home loans serviced by Huntington." (ECF 1–1 at 4.) The Complaint states that Defendant "regularly and systematically charges late fees to consumers who have made a timely payment of the current month's installment" in violation of state law prohibiting the "pyramiding" of late fees. *Id.* With respect to the individual defendants, the Complaint alleges that Defendant's imposition of late fees also violated the terms of Plaintiffs' loan note. *Id.* at 5.

Count I is styled "Illegal Assessment of Late Fees (Class and individual claim)." *Id.* at 6. This Count, which incorporates all preceding paragraphs, states:

> 18. Plaintiffs' Note prohibits the assessment of late fees for payments made within the contractual period and prohibits the assessment of more than one late fee for each late payment.
>
> 19. Pursuant to West Virginia Code, § 46A–3–112, Huntington must first credit payments, for purposes of assessing late fees, to current installments. Moreover, Huntington may only charge a late fee once, no matter how long an installment remains in default.
>
> 20. Nevertheless, Huntington regularly and systematically assessed Plaintiffs late fees for months in which they made timely monthly payments.
>
> 21. As a result, Defendant assessed Plaintiffs and the putative class members late fees in violation of the terms of their contracts and West Virginia Code § 46A–3–112.
>
> 22. By assessing Plaintiffs and the putative class members these unlawful late fees, Huntington caused Plaintiffs and the putative class members to suffer damages.

*Id.* at 6–7.

Count II is styled "False Representation of Amount of Claim (Class and individual claim)." *Id.* at 7. This claim incorporates the preceding paragraphs and states: "By assessing or collecting late fees that it had no right to assess, Huntington misrepresented the amount of a claim in violation of West Virginia Code § 46A–2–127." *Id.*

The Complaint seeks a declaration that Defendant's conduct is unlawful, actual and compensatory damages, statutory civil penalties and attorneys' fees, and interest. *Id.* at 7–8.

In its motion for judgment on the pleadings, Defendant reasons that, under *Beneficial*, Plaintiffs' claims are completely preempted by §§ 85 and 86 of the NBA. (ECF 7 at 5–10.) Defendant contends this is so because under 12 C.F.R. § 7.4001 late fees fall within the legal

7

definition of "interest." *Id.* at 6. Defendant, citing *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 745 (1996), asserts the following proposition: "A challenge to the amount of interest charged is a usury claim. Plaintiffs' claim, therefore, that a national bank violated state law by assessing late fees that were excessive or improper is legally a claim for a usury violation, regardless of how that claim is denominated." *Id.* at 7.

In response, Plaintiffs do not dispute that §§ 85 and 86 of the NBA pre-empt all state law claims that challenge as usurious rates of interest charged by a national banks. (ECF 12 at 5.) Plaintiffs contend, however, that their claims do not assert that the amount of the $15 late fee at issue is usurious. Rather, Plaintiffs' claims are based on the distinct theory that Defendant's regular and systematic assessment of late fees when a consumer has made a timely payment of the current month's installment violates the terms of the consumer's loan contract and violates §§ 46A–3–112 and 46A–2–127 of the WVCCPA. Plaintiffs stress that their theory of liability is that Defendant assessed late fees when no late fees should have been assessed.

The Court agrees with Plaintiffs that they do not assert claims that challenge as usurious the rate of interest (that is, the *amount* of the $15 late fees) charged by Defendant. Indeed, the word "usury" appears nowhere on the face of the Complaint. Nor do Plaintiffs ground their claims in West Virginia's usury statute, West Virginia Code § 47–6–6. Here it is clear that Plaintiffs' claims do not assert that the $15 late fee is excessive. If they did, such a claim would assert a theory of usury. Rather, Plaintiff's theory is that Defendant's practice of assessing a late fee in a month where Plaintiffs made a timely payment violated the terms of the loan contract and also violated West Virginia Code §§ 46A–3–112 and 46A–2–127. Because this theory does not

challenge the rate of interest charged by Defendant, Plaintiffs' claims are not usury claims and are not pre-empted by §§ 85 and 86 of the NBA.

The Court's determination is not in conflict with the Supreme Court's holding in *Smiley*. In that case, the Supreme Court examined the question whether § 85 of the NBA authorized a national bank to charge late fees that were lawful in the bank's home state but unlawful in the state where the credit card holders resided. 517 U.S. at 737. Smiley contended that the late fees were unconscionable under California law. *Id.* at 738. The national bank, Citibank, was located in South Dakota. *Id.* at 737–38. Smiley had two credit cards with Citibank. *Id.* The agreement for one card provided that Smiley would be charged a $15 late fee for each monthly period in which she failed to make the minimum monthly payment within twenty-five days of the due date. *Id.* Under the other card agreement, Citibank would impose a late fee of $6 in the minimum payment was not received within fifteen days of its due date. *Id.* at 738. Also, an additional charge of $15 or 0.65% of the card's outstanding balance, whichever was greater, would be assessed if the minimum payment was not received by the next minimum monthly payment due date . *Id.*. The state court dismissed Smiley's complaint on the grounds that her challenge to the late fees was pre-empted by § 85 of the NBA and the state appellate courts affirmed the dismissal. *Id.* at 738-39.

The issue before the Supreme Court in *Smiley* was whether the statutory term "interest" included late fees. *Id.* At the time Smiley filed her complaint, the federal regulation [12 C.F.R. § 7.4001(a)] which expressly states that "interest" under § 85 includes "late fees", had not yet been promulgated. *Id.* 739. This regulation, however, was adopted, however, in the course of Smiley's appeal. *Id.* The Court found that, although use of the term "interest" in § 85 was

9

ambiguous, deference should be given to the Comptroller of Currency's judgment as to the meaning of "interest" as set forth in § 7.4001(a). *Id.* at 740–743. The Court then held that inclusion of "late fees" in the definition of "interest" under § 7.4001(a) was a reasonable interpretation of the term "interest" in § 85. *Id.* at 745–47. In making this determination, the Court rejected, among other contentions, Smiley's argument that late fees should not be deemed interest because such fees are flat charges and not percentage charges. The Court stated that "the Comptroller's refusal to give the word 'rate' the narrow meaning [Smiley] demands" was not unreasonable. The Court noted that at the time the NBA was enacted the word "rate" was commonly understood to mean "the price or amount stated or fixed on any thing." *Id.* at 746.

Contrary to Defendant's assertion, *Smiley* does not stand for the broad proposition that "state law claims governing the charging of late fees" are preempted by §§ 85 and 86 of the NBA. (ECF 7 at 2.) Rather, *Smiley* simply held that the Comptroller of Currency's inclusion of "late fees" within the definition of "interest" was a reasonable agency judgment. It is true that the Court then affirmed, without further discussion, the state appellate courts' affirmance of the dismissal of Smiley's complaint on pre-emption grounds. But it appears that Smiley's claims included a challenge to the *amounts* of the late fees, which is a challenge to the rate of "interest" and is a challenge pre-empted by § 85 of the NBA. Because the Court did not examine this specific question, however, *Smiley* simply stands for the point of law that the Comptroller's inclusion of "late fees" within the regulatory definition of "interest" is lawful. *Smiley* does not broadly hold that § 85 pre-empts all challenges to the lawfulness of a national bank's assessment of late fees. Nor does *Smiley* stand for a rule that § 85 pre-empts state law claims that do not challenge a late fee as excessive or usurious.

10

The Court finds that Plaintiffs' claims do not challenge the rate of interest charged by Defendant, but rather challenge Defendant's practice of charging an otherwise non-usurious late fee when no late fee should be charged in the first place. The Court's view on this matter is not a novel interpretation. In *W. Va. ex rel. McGraw v. Capital One Bank (USA) N.A.*, Civil Action No. 3:10-cv-0211, 2010 WL 2901801 (July 22, 2010) (Chambers, J.), this Court applied similar reasoning in the context of a national bank's practice of imposing over-the-limit fees in certain circumstances and the bank's failure to report its imposition of certain fees until issuance of the consumer's second credit card statement. Judge Chambers reasoned that the plaintiff's challenges were claims that the bank engaged in deceptive practices and not claims that the amount of the fees charged was excessive. *Id.* at *3–4. *See also Hood ex rel. Miss. v. JP Morgan Chase & Co.,* 737 F.3d 78, 90–92 (5th Cir. 2013) (per curiam) (stating that, assuming the bank's payment protection fees were within the definition of "interest" under § 85, none of the plaintiff's claims could be fairly construed as allegations that the bank violated the NBA because plaintiff did not claim that the rate of interest the bank charged was excessive, but rather challenged the bank's practice of improperly enrolling certain unqualified customers in the payment protection plans); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1021 (S.D. Iowa 2009) ("Hence, the basis of the alleged excessiveness is that Wells Fargo charged fees when they should not, a wholly different claim from a claim that Wells Fargo applied an illegal interest rate."); *Cross–Cnty. Bank v. Klussman*, No. C–01–4190–SC, 2004 WL 966289 at *6 (N.D. Cal. Apr. 30, 2004) ("Plaintiff does not challenge the legality of the rate of interest charged by Defendants. Rather, Plaintiff claims that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in short, should never have been charged at all.").

In sum, the Court finds that Plaintiffs' claims are not pre-empted by the NBA. Consequently, Defendant improperly removed this case from state court on the basis of federal question jurisdiction. The Court now turns to Defendant's alternative ground for jurisdiction—diversity jurisdiction.

### B. *Diversity jurisdiction under the Class Action Fairness Act*

As an alternative basis for this Court's jurisdiction, Defendant invokes the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). CAFA grants district courts original jurisdiction over "a class action" if the class has more than 100 members, the amount in controversy is greater than $5,000,000, and the parties are minimally diverse. 28 U.S.C. § 1332(d)(2), (5)(B). To "determine whether the matter in controversy" exceeds $5,000,000, "the claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6). The minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2)(A). A "class action" is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. § 1332(d)(1)(B).

The Court notes at the outset that Plaintiffs did not seek remand of this case following removal. Nor have they challenged the accuracy of Defendant's diversity jurisdiction averments. The Court is otherwise satisfied that it has diversity jurisdiction over this case based on the allegations set forth in Defendant's notice of removal. Defendant plausibly alleges that the putative class exceeds 100 members and that the amount in controversy exceeds $5,000,000. (ECF 1 at 12–16.) Defendant is a federally chartered bank with a principal place of business in

Columbus, Ohio and the individual Plaintiffs and putative class members are all West Virginia residents. Thus, the minimal diversity requirement is satisfied. Plaintiff's Complaint states that it brings this putative class action pursuant to West Virginia Rule of Civil Procedure 23, the state counterpart of Federal Rule of Civil Procedure 23. Accordingly, the Court has diversity jurisdiction in this case.

## IV. CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendant's motion for judgment on the pleadings [ECF 6] and **DENIES** Plaintiffs' motion for leave to file a surreply [ECF 20].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 26, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE