IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JEREMY A. POWELL and TINA M. POWELL,
individually and on behalf of a
class of similarly situated persons,

      Plaintiffs,

v.                                CASE NO. 2:13-cv-32179

THE HUNTINGTON NATIONAL BANK,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court is Plaintiffs' Motion to Compel Discovery Responses (ECF No. 38), Plaintiffs' Memorandum in Support of the Motion to Compel Discovery Responses (ECF No. 39), Defendant's Memorandum in Opposition to Plaintiffs' Motion (ECF No. 45), Defendant's Motion for Protective Order (ECF No. 46), Plaintiffs' Reply to Defendant's Memorandum in Opposition (ECF No. 49), Plaintiffs' Response in Opposition to Defendant's Motion for Protective Order (ECF No. 51) and Defendant's Reply to Plaintiffs' Response in Opposition (ECF No. 56).

In Plaintiffs' Motion to Compel Discovery Responses and Memorandum in Support, Plaintiffs requested this Court order the Defendant to produce a complete response to Interrogatory No. 2 of Plaintiffs' First Set of Interrogatories and Requests for Production of Documents, as well as the documents identified in response to or reviewed in preparation to responding to that Interrogatory, as requested in Request for Production No. 1 (ECF No. 39). Interrogatory No. 2 states as follows:

> Please describe the manner and method of determining the identity and set forth the numbers of West Virginia borrowers (including the number of instances Defendant engaged in each type of conduct with respect to a particular borrower) (a) who were charged a late fee that exceeded $15.00, and the amounts of such late fees actually collected from that borrower, and (b) who were charged more than one late fee for an alleged late or missed payment, and the amounts of such late fees.

Plaintiffs "allege, on behalf of a putative class, that Defendant has engaged in systematic abusive loan-servicing practices in its assessment of illegal and multiple late fees to its West Virginia consumers" (ECF Nos. 1, 39). Plaintiffs assert that although their payments to Defendant were due on the first day of each month, their Note with Defendant stated that a late fee would not be imposed if payment was received "by the end of fifteen calendar days after the payment is due." (*Id.*) Plaintiffs assert that pursuant to the Note, Defendant agreed to only charge Plaintiffs one late fee for each missed payment in an amount not to exceed $15.00. Plaintiffs assert that Defendant charged multiple late fees for a single missed payment in violation of the West Virginia Consumer Credit Protection Act (hereinafter "WVCCPA"). Plaintiffs alleged that Defendant "regularly and systematically assesses late fees in this manner to other putative class members." (*Id.*)

Defendant objected on the grounds that the information sought is not relevant or discoverable. Defendant further objected to Interrogatory No. 2 as "overly broad and premature because it seeks information regarding purported class members where no class has been certified" (ECF No. 38-1). Defendant objected asserting the information sought is protected by the attorney-client privilege and/or attorney work product doctrine and/or seeks the mental impressions of counsel. Defendant asserted that it would be unduly burdensome for the Court to require it to provide the information Plaintiffs seek to compel. Subsequently, Defendant provided a supplemental response stipulating that the purported class in Plaintiffs' Complaint is sufficiently numerous to satisfy Fed. R. Civ. P. 23(a)(1).

Defendant's Memorandum in Opposition to Plaintiffs' Motion to Compel Discovery Responses asserts that this Court should deny Plaintiffs' Motion to Compel "because they fail[ed] to carry their burden of showing how the discovery they seek is likely to substantiate their class allegations" (ECF No. 45). Further, Defendant asserts that "Plaintiffs do not need discovery to demonstrate numerosity, because [Defendant] has stipulated to numerosity." (Id.) Defendant avers that Plaintiffs are unable to demonstrate that the number of borrowers or the number of allegedly improper late fees is relevant to the Rule 23 commonality, adequacy or typicality factors.

Defendant asserts that because it has stipulated to numerosity, the "number" of individuals is neither relevant, nor discoverable at this stage in litigation. Under Federal Rule of Civil Procedure 23(a), a party moving for class certification must meet the following four (4) prerequisites: (1) the class is so numerous that joinder is impossible; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the representative will adequately protect the class interests. These requirements are referred to as numerosity, commonality, typicality and adequacy of representation. The prerequisite of numerosity for class actions under Fed. R. Civ. P. 23(a)(1) states that one member of a class may sue as a representative party on behalf of all members if the class members are so numerous that joinder of all is impractical.

Defendant filed a Motion and Memorandum in Support of Motion for Protective Order on September 5, 2014 (ECF No. 47). Defendant requested "a protective order limiting the burdensome discovery sought by Plaintiffs at this point in the proceedings, prior to any decision as to whether class certification is even appropriate." Defendant asserted that the discovery sought by Plaintiff is premature "because it is directed to the merits of the putative class

members' claims." Defendant also asserted that providing the discovery sought by Plaintiffs would be unduly burdensome "because it requires a manual, loan-by-loan review of each West Virginia borrower's account history for a potential period of 30 or more years." Defendant later states that "After discussions with Plaintiffs' counsel, on June 25, 2014, Plaintiffs agreed to revise the scope of this Interrogatory as follows: Borrowers with Huntington-serviced loans that were in effect one year prior to the filing of the Complaint, for which borrowers were assessed and/or paid a late charge in a month in which a timely, full principal and interest payment was made because an earlier maturing installment was not paid." (*Id*.)

Plaintiffs' Reply in Support of Motion to Compel asserts that the discovery sought "is necessary to brief class certification issues, including Rule 23 commonality and predominance" (ECF No. 49). Plaintiffs assert that the information sought includes loan servicing records, the number of borrowers and late fees that were assessed is contrary to West Virginia law and goes to issues other than numerosity. Specifically, Plaintiffs must show commonality and predominance. Plaintiffs state that "The proposed class itself will be restricted to loans that were in effect (*i.e.* active loans) at least one year prior to the filing of the Complaint. It is therefore unlikely that Defendant would need to review any of the pre-2000 non-electronic records, as it would be the unusual mortgage in the putative class that was neither issued nor refinanced in the post-2007 low interest rate environment, and the concern is speculative as Defendant has not to date identified any such loans that would require this review." Plaintiffs assert that the discovery sought is needed before their motion for class certification is filed in order to meet the requirements of Rule 23.

Defendant's Reply Memorandum in Support of Motion for Protective Order seeks a protective order limiting discovery with respect to Interrogatory Number 2, Interrogatory

Number 6, Request for Production Number 22 and Topic Number 6 in the Notice of Plaintiff's Rule 30(b)(6) Deposition Duces Tecum of The Huntington National Bank (ECF No. 56). Defendant asserts that "Plaintiffs seek detailed substantive information about the merits of each putative class members' claims." Defendant asserts that obtaining the information sought is unduly burdensome as it "requires an onerous line-by-line review of the loan payment histories for all potential class members, as well as a review each individual borrower's loan life." Defendant asserts that Plaintiffs have failed to demonstrate that the discovery they seek is necessary to address class certification issues. Finally, Defendant asserts that "The pending Motion for Judgment on the Pleadings provides additional support for a protective order." (*Id.*)

## Discussion

Numerosity & Rule 23 Class Certification Prerequisites

Defendant asserts that prior to certification of a class action, discovery is generally limited and in the discretion of the Court (ECF No. 45). *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978). Defendant asserts that "Federal courts routinely deny discovery of the number of individuals in a class where the defendant has stipulated to numerosity." (*Id.*) Defendant's reliance on cases cited in its Memorandum in Opposition is misleading. First, the Orders cited by Defendant are not 4th Circuit cases. Second, the cases cited have one intrinsic factual variance that differentiates it from the present matter. Defendant in the present matter stipulates to numerosity but not to the other three (3) prerequisites[1] for class certification under Federal Rule of Civil Procedure 23(a). The cases cited involve defendants that also stipulated to or did not challenge other class certification prerequisites, in addition to numerosity. In *Bishop's Property & Investments, LLC v. Protective Life Insurance Company*, 2007 U.S. Dis. LEXIS 85233 at *9-10, Defendant agreed to stipulate to numerosity and typicality. The Georgia Court

---

[1] Commonality, typicality and adequacy of representation.

5

held that the stipulations eliminated Plaintiff's need to discover loan termination dates because the dates were not relevant in demonstrating other certification prerequisites.

In *Kingery v. Quicken Loans, Inc.*, Civil Action No. 2:12-cv-01353 (Southern District of West Virginia, (February 20, 2014)), this Court previously held the Defendant's stipulation of numerosity would diminish the plaintiff's ability to prove willingness through pattern and practice evidence, and leave the plaintiff unable to identify classes[2] which the Court may find acceptable. The District Court in *Kingery* upheld the undersigned Magistrate Judge's Order over Quicken Loans' objections. *Kingery* relied upon *Soutter v. Equifax Info. Servs.*, LLC, 498 F. App'x 260 (4th Cir. 2012), in finding that discovery of the number of people who fell into classes was relevant even though Defendant stipulated to numerosity. The Court in *Soutter* observed that in order to establish typicality for class certification, the plaintiff's "interest in prosecuting [her] own case must simultaneously tend to advance the interests of the absent class members." *Id*. at 265 (quotations and citations omitted). Discovery may be needed to determine the extent to which individual potential class members have an interest in separate actions, inconsistent with class treatment. Manual for Complex Litigation Fourth p. 262, (Federal Judicial Center 2004).

In the present matter, Plaintiffs assert that the discovery sought, including loan servicing records and the number of borrowers and late fees that were assessed go to issues of commonality and predominance in addition to numerosity (ECF No. 49). Plaintiffs must also establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other

---

[2] It is not outside the realm of possibility that the Court may limit or identify subclass treatment based on objective criteria. For example, class members may be certified in subclasses by the number of late fees received per plaintiff.

available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The Court finds that the evidence sought is relevant to the determination of class certification. Rule 23(c) instructs the Court to determine class certification based upon an adequately developed record. Therefore it is the parties' obligation to present the Court with sufficient information to support an informed decision on certification. Manual for Complex Litigation Fourth p. 256 (Federal Judicial Center 2004). Furthermore, the merits of class certification should not be decided based upon discovery rulings. "Courts often bifurcate discovery between certification issues and those related to the merits of the allegations. Generally, discovery into certification issues pertains to the requirements of Rule 23 and tests whether the claims and defenses are susceptible to class-wide proof; discovery into the merits pertains to the strength or weakness of the claims or defenses and tests whether they are likely to succeed." (*Id.*) The Court finds that the evidence is discoverable pursuant to Fed. Civ. Pro. Rule 26(b)(1).

<u>Relevance</u>

Defendant asserts that Plaintiff has failed to show how the discovery sought is relevant to the other three (3) class certification prerequisite pursuant to Rule 23. Plaintiffs' Interrogatory No. 2 seeks the manner and method of determining the identity and number of West Virginia borrowers; who were charged a late fee exceeding $15.00, and the amounts of late fees actually collected from borrower; and, who were charged more than one late fee for an alleged late or missed payment, and the amounts of such late fees (ECF No. 38). Plaintiffs assert that the information requested is also necessary to determine Rule 23 certification issues, including commonality, typicality and adequacy of representative parties to fairly and adequately protect

7

the interests of the class (ECF No. 39). The Court finds that Plaintiffs have demonstrated the relevancy of the evidence sought in determining class certification.

Merits Versus Pre-Class Certification

"At the pre-class certification stage, discovery in a putative class action is generally limited to certification issues". *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978)). "[D]iscovery on the merits should not be had prior to the pre-certification issue." *Rodriguez v. Banco Cent.*, 102 F.R.D. 897, 903 (D.P.R. 1984).

The United States Supreme Court has held that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). In determining if a party has met this burden, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* The District Court must perform a "rigorous analysis," to ensure that a class certification is appropriate, because class actions remain "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). *Wal-mart* clarified, in examining commonality under Rule 23(a)(2), that "the members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (quoting *Wal-mart*, 131 S.Ct. at 2551).

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Plaintiffs assert that evidence of similar late fees in loan-servicing practices by Defendant is

8

discoverable pursuant to Rule 26(b)(1) because the evidence is relevant to Plaintiffs' claim that Defendant engaged in systematic abusive loan-servicing practices in its assessment of illegal and multiple late fees to its West Virginia consumers.

Evidence of similar transactions carried out by Defendant is relevant to Plaintiffs' claims. This Court has held that "discovery of such information is routinely allowed in predatory lending cases." *Marks v. Global Mortgage Group Inc.*, 218 F.R.D. 492; 2003 U.S. Dist. LEXIS 20999. The Court finds the information sought by Plaintiffs is relevant to the claims and defenses asserted in the pleadings.

Unduly Burdensome

The party opposing discovery has the obligation to submit evidence supporting its claims that the requests are unduly burdensome, oppressive or improperly invasive. To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments. *Robinson v. Quicken Loans, Inc.*, 3:12-cv-00981 (S.D. W.Va. Dec. 5, 2012)(citing *Convertino v. United States Department of Justice*, 565 F.Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome and oppressive by submitting affidavits or other evidence revealing the nature of the burden). Defendant asserts that "it would be unduly burdensome to require Huntington Bank to perform this labor-intensive review, particularly in light of the fact that Huntington Bank already has produced a substantial sampling of the information Plaintiffs claim to need and that no class has been certified" (ECF No. 45).

Defendant's Notice of Removal to remove this action form the Circuit Court of Kanawha County, West Virginia to the United States District Court for the Southern District of West Virginia, Charleston Division, stated that "an independent third party accounting firm,

9

PricewaterhouseCoopers LLP ('PwC'), has reviewed [] 120 loan payment histories. PwC verified that those 120 loans have at least one instance of a late fee assessed in a month that full principal and interest payment was made" (ECF No. 1). As such, Defendant asserts that it has identified enough members for Plaintiffs to identify a class (ECF No. 1). Plaintiffs assert that they do not know how or why the 120 loans were selected by Defendant for review and "Defendant has not promised to treat these 120 loans as wholly illustrative of Defendant's late fee policies" (ECF No. 49).

The Court may limit the extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome or less expensive. Fed. R. Civ. P. 26(b)(2)(C). This Court has previously held that the names, addresses and phone numbers of West Virginia borrowers were discoverable from the financial institution. This Court found when borrowers obtained a loan which originated by the Defendant using the same appraiser or valuation system it used to appraise or value the borrower's property, plaintiff's discovery request was not overly burdensome. *Janet R. Robinson v. Quicken Loans, Inc., Wells Fargo Bank, N.A., and John Doe Holder*, Case No. 3:12-cv-00981, (ECF No. 106 (Feb. 11, 2013)) (citing *Marks v. Global Mortgage Group, Inc.*, 218 F.R.D. 492, 497 (S.D. W.Va. 2003). In *Robinson*, Magistrate Judge Eifert ordered Defendant to provide the requested information in a full and complete response. *(Id.)* Judge Eifert granted Robinson's motion to compel over Defendant's objection that the estimated $13,000 cost of production was overly burdensome. Defendant appealed Judge Eifert's Order, however, Chief Judge Chambers affirmed the Order stating that the information was relevant to Robinson's claim. *Robinson,* 3:12-cv-00981 (ECF No. 147) (April 19, 2013). In the current action, this Court agrees with the *Robinson* Court's analysis. This Court finds Plaintiff's

discovery requests permissible and relevant under the scope and limits of discovery of Fed. R. Civ. P. Rule 26.

Attorney-client Privilege and/or Attorney Work Product Doctrine

The purpose of the attorney-client privilege is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981). The privilege is not favored by the federal courts because it interferes with the truth seeking process and contravenes the right of citizens to evidence, and should be strictly confined within the narrowest possible limits consistent with the logic of its principle. *See In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). A party asserting privilege has the burden of demonstrating its applicability. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). In claiming the attorney-client privilege, a party must satisfy procedural and substantive criteria. Procedurally, the party must "expressly make the claim" and "describe the nature of the documents… in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(a)(5)(A). Substantively, a party must show that:

> The asserted holder of the privilege is or sought to become a client;
> (1) The person to whom the communication was made:
>     (a) is a member of the bar of a court or is his subordinate and
>     (b) in connection with this communication is acting as a lawyer;
> (2) The communication relates to a fact of which the attorney was informed:
>     (a) by his client,
>     (b) without the presence of strangers,
>     (c) for the purpose of securing primarily either:
>         i. an opinion on law;
>         ii. legal services; or
>         iii. assistance in some legal proceeding;
>     (d) for the purpose of committing a crime or tort; and
> (3) The privilege has been:
>     (a) claimed and

(b) not waived by the client.

*Jones*, 696 F.2d at 1072 (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-359 (D. Mass. 1950); *See also NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011).

The United States Court of Appeals for Fourth Circuit has established a very narrow view of this aspect of the attorney-client privilege. Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents or superiors or to other lawyers in the case of joint reprsentation, if those communications reveal confidential communications. The Fourth Circuit is clearly among the strict construction courts who extend the privilege to legal opinions and communications from attorneys to clients only if and, arguable only to the extent, that the opinion contains within it, and arguably inextricably bound up to the legal opinion, the confidences made by the client to the lawyer that form the basis of the legal opinion. *See Eric Jones, et al. v. Susan Murpy, et al.*, 256 F.R.D. 510 (2008); citing Epstein, Edna Selan, *The Attorney-Client Privilege and the Work Product Doctrine 78* (5th ed. 2007).

In claiming the work product doctrine privilege, the party must demonstrate that the documents in question were created "in preparation for litigation." *Hickman v. Taylor,* 329 U.S. 495, 509-14, 67 S. Ct. 385, 91 L.Ed. 41 (1947). When a party relies on a privilege log to assert these privileges, the log must "as to each document… set [ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993). The Court finds that Defendant failed to meet its burden of demonstrating that the information sought was made by a member of the bar without the presence of strangers, for the purpose of securing an opinion of law, legal

services or assistance in a legal proceeding. Further, this court finds that Defendant failed to demonstrate the evidence in question was created in preparation for litigation.

The Gramm-Leach-Bliley Act

The Gramm-Leach-Bliley Act, found at 15 U.S.C. § 6801, *et. seq.*, was enacted to provide procedures for financial institutions "(1) to insure the security and confidentiality of consumer records and information; (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and (3) to protect against unauthorized access to or use of such records or information which could result in substantial harm or inconvenience to any customer. 15 U.S.C. § 6801(b) (2003). Accordingly, the Gramm-Leach-Bliley Act requires a financial institution to give its customers notice and an opportunity to opt out of disclosure before releasing any customer's "nonpublic personal information to a non-affiliated third party." *Id*. at § 6802. This opt-out requirement, however, is subject to express exceptions. *Id*. at § 6802(e). Section 6802(e)(8) of the Act permits the disclosure of nonpublic personal information. *Id.*

The Gramm-Leach-Bliley Act allows disclosures made to respond to judicial process or government regulatory authorities having jurisdiction over the financial institution for examination, compliance or other purposes as authorized by law. When a party must disclose information pursuant to a discovery request, the party is responding to judicial process. Thus, under the judicial process exception in 15 U.S.C. § 6802(e)(8), the defendant may disclose its customers' nonpublic personal information in response to the plaintiffs' discovery request. *Mark*, 218 F.R.D. at 496.

In *Marks*, the Court held that although the Gramm-Leach-Bliley Act does not include an exception to disclose for civil discovery, the mere fact that a statute generally prohibits the disclosure of certain information does not give parties to a civil dispute the right to circumvent

13

the discovery process. (*Id.*) The Court held that because the disclosure of information for discovery purposes was not expressly prohibited and because the Act permits disclosures made to respond to judicial process, the information was discoverable. In *Marks*, the Court ordered the information be provided pursuant to a protective order. Likewise, in the present matter, this Court finds that the information is discoverable and should be disclosed pursuant to the parties' protective order.

### Conclusion

For the reasons stated above, it is hereby **ORDERED** that Plaintiff's Motion to Compel Discovery Responses (ECF No. 38) is **GRANTED**. It is **ORDERED** that Defendant shall supplement discovery responses by November 3, 2014, or any subsequent discovery deadline ordered by Judge Johnston. The supplemental discovery responses shall be subject to the Protective Order entered on September 25, 2014 (ECF No. 55). Further, it is **ORDERED** that Defendant's Motion for Protective Order (ECF No. 46) is **DENIED**. Parties shall bear their own costs for bringing this matter before the Court.

The Court directs the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTERED: October 30, 2014

Dwane L. Tinsley
United States Magistrate Judge